Thank you, Your Honors. David Merrill, appearing on behalf of Appellant R & S St. Rose Lenders, LLC. May it please the Court. There's essentially two issues, as the Court's noted. There's the jurisdictional issue, which the Court raised in its order of September 29, regarding the Landmark case. And then there's the merits issue, which is the District Court's, what we believe, improper reversal of the bankruptcy court on the conclusion of whether collateral estoppel applied from the State Court's judgment entered below with respect to, on the trial of priority. St. Rose Lenders believes the Court does have jurisdiction, and the District Court erred by reversing, in part, the bankruptcy court. With respect to the jurisdictional issue, and the Court directed counsel to look at, specifically, at Landmark Fence. Landmark Fence, of course, as the Court knows, there was a class, there was an issue of a wage calculation, and whether that was proper or not, the bankruptcy court applied the incorrect legal standard. The District Court reversed it for further fact-finding, applying the correct legal standard. We believe that's distinguishable from this case in that, although the District Court opinion does say, I'm remanding for further proceedings consistent with this case, the District Court really hasn't said there needs to be some additional fact-finding applying the correct standard here, and there wouldn't be any additional fact-finding because collateral estoppel is a purely legal question. It's a question of law, not a factual question. So we believe that St. Rose Lenders believes that Landmark Fence does not apply, even if it did under the flexible approach that the Court takes with respect to its jurisdiction. We are already here. We believe planned confirmation is done, is final. And we believe that, as a matter of judicial economy and judicial efficiency, that undertaking this appeal makes a lot of sense, because this is an issue that the collateral estoppel effect of the State court's order, the State court's judgment, is an issue that is being continually raised by BB&T down below, in that they are seeking to see. Roberts. Is that the only issue being raised? It's not the only issue being raised, but it is being raised. So why isn't this a piecemeal appeal? It's just one question of many that will go into the bankruptcy court and presumably the District Court's adjudication of what the priorities and how the money gets paid out. It's not a piecemeal appeal in that because the District Court's order is a final order. We believe that. What does that mean? It means that it's final because you've appealed it to us, but it's not final in terms of winding anything up. I understand it's not final as far as winding anything up, but you're correct. It doesn't resolve the entire case. But with respect to the ---- Or even anything other than one legal issue with regard to an adjudication of priority. Correct. It does resolve that one narrow issue, but that one narrow issue is an important issue that we believe for judicial efficiency and judicial economy should be decided now instead of having to go back and continuing to argue and fight over that issue. I understand that in the immediate case, but also you have to consider our perspective because if we open the door to this, why don't we keep getting piecemeal appeals? And, you know, we're already stuck with it. We've read it. Yes, we're probably pretty close to being able to render you a judgment on this subject. Sure. But my friends who get a case a few months from now saying I should never have to consider this on a piecemeal basis will not be happy with that decision, and I might be on that panel and I wouldn't be happy with myself. Sure. So you really got to do more than tell me, well, it would be nice in this case to get this question wound up. It's been teed up and so forth. That's not enough for jurisdiction. Well, and I think the critical distinction here, though, Your Honor, is that there is not a – it is a purely legal question. There is no additional fact-finding that needs to be done, and I think that's the critical distinction and landmark. The critical distinction and landmark is it's been sent back for additional fact-finding by the bankruptcy court, and I understand the court's hesitation there because the bankruptcy court obviously is going to be the finder of fact, the trier of fact, the determiner of fact, and that they're more well-suited for that than, of course, this Court is. But we don't have that situation here because it's a purely legal question that's being involved. It's a collateral estoppel legal question, and that's the distinction I think that's critical and landmark as to why this Court has jurisdiction and why it's not a piecemeal appeal that should be taken up at this time. With respect to the merits of the issue of collateral estoppel, BB&T in the bankruptcy court has continuously and repeatedly tried to challenge the ruling in the State Court. The ruling in the State Court was an almost 30-page findings of fact and conclusions of law. It was issued after a 10-day bench trial. It was appealed by BB&T to the Nevada Supreme Court. They failed on that appeal. They then sought rehearing by the panel of the Nevada Supreme Court that decided it. Again, they failed. They sought reconsideration en banc by the Nevada Supreme Court. Again, they failed. And they ---- Sotomayor, what issues did they really fight about? Because that's the worry that I have. It seems to me when I read what the district court did here, the district court suggested a lot of findings of fact. But in fact, the final order the district court came out with was really not determining some of those issues. I couldn't tell whether they really litigated all of those issues. It seemed to me that it just said, in effect, we can't show that branching out branch banking and trust is any success or an interest to anybody because there isn't enough here. That was the kind of sort of the ultimate conclusion. But to get to that ---- Well, frankly, we've got ultimate conclusions. We can go clear back to Marbury v. Madison about ultimate conclusions. Sure. And we've had a lot of then discussion about whether the Supreme Court or not interprets constitutional precedent as a result thereof. That's what I've got to look at. I have got to look at what is the decision? What was the decision? Not what's the ---- what are the what we call dicta to get there, but what is the ultimate decision? And when I read what is the ultimate decision, it didn't seem to go through anything that you're now talking about. Well, Your Honor, I think with respect to issue conclusion ---- issue preclusion, it's not just the ultimate decision. If it was the same claim, that would be a claim preclusion issue, but it's what the issues were that were necessarily and actually litigated in that State court case. Well, I understand that. That's why when I look at what it is that they really concluded, I say what was really litigated. I'm not sure all the things you now want me to consider needed to be litigated at all. All I needed to find is do we have any evidence that your client should get the claim? And they said no. The issue that was litigated was ---- Not your client. Sorry. Yeah. The issue that was litigated was did R&S St. Rose Lenders lend money to R&S St. Rose through a note that was secured by a deed of trust, and what priority did that deed of trust have in relation to a deed of trust recorded on the property by Colonial Bank two years after St. Rose Lenders' deed of trust? That was the issue that was litigated in the State court. Now, where was the amount of the R&S Lenders loan litigated? It's recited as one of the findings of fact, but it doesn't seem to have anything to do with what the court was deciding. In the second amended complaint, which is in the supplemental excerpts of record, page 45 at paragraph 14, BB&T did raise the issue that the raised below, which was there was no consideration for this note. If there was no consideration for this note, the district court certainly couldn't have found that St. Rose Lenders' note or deed of trust had priority if there was nothing underlying the note, if it was a sham. That was litigated down below. That issue was raised in BB&T's second amended complaint. And that's why there is a specific finding by the district court concluding that there was a loan from St. Rose Lenders to R&S St. Rose. There's multiple findings of fact that there was a loan and that lenders borrowed that money from individual persons, issued them promissory notes, and then turned around and lent that money to R&S St. Rose. That's the issue that was decided. And because there was this loan and the deed of trust recorded first, the State district court also entered declaratory relief in favor of St. Rose Lenders, determining that its deed of trust should retain its priority. It could only do that if it resolved the issue of whether there was consideration for its note that supported the deed of trust. So that's the specific point. Kennedy. Is there anything more specific in the findings of fact and conclusions of law of the Nevada State court that speaks to the consideration issue? The finding of fact that there was a loan of $12 million from St. Rose Lenders to St. Rose I think would be the finding of fact that would resolve the consideration  issue. And if the issue was only as to whether there was consideration, was there adjudication as to the amount of the consideration? Is there a need for the Nevada court to speak to that? I mean, I think the court did speak to that, and there was a need for it, because, again, the question was, if you're challenging the entire validity of the note in the first place, of course the court has to make a determination as to whether it's valid, whether there's consideration, and in that process makes a determination that there was $12 million, in fact, of money lent from Lenders to St. Rose. So that was necessary, a necessary determination of the court. The, again, the findings of fact. So we believe the issue is identical, and we believe it was necessary. And this is just another process by which BB&T is trying to use bankruptcy procedure and the bankruptcy process to circumvent basically 6 years of litigation that went all the way up to the United States Supreme Court. And the bankruptcy court recognized that. Kennedy. Well, the U.S. Supreme Court didn't speak to the issue. Fisher. Oh, yeah, yes. It denied the writ of certiorari, yes. Kennedy. And for that matter, the Nevada Supreme Court didn't speak to what we're talking about today, did it? Fisher. It did, in that BB&T did challenge in the Nevada Supreme Court the factual findings. Kennedy. You're asking me to take back factual findings. I have little experience with the Nevada Supreme Court. I can assure you from the perspective of an appellate judge, that's somebody else's job. I'm not going to worry about that. You can pick it up in the next court. So the only one that arguably addressed the issue head on is the Nevada District Court, is that the term? Fisher. That's correct, yes. Kennedy. Nevada District Court. Fisher. Well, but if there's a finding of fact that BB&T concluded was clearly erroneous, the onus and the burden upon them, that was litigated below. The burden upon them was to address that issue in the Nevada Supreme Court.  Well, sure, but the Nevada Supreme Court resolved the case on a different basis. But the Nevada Supreme Court did recognize that they challenged findings of fact and did conclude that there was substantial evidence to support them. So if they didn't challenge it, then that's sort of their issue. I'd like to reserve the rest of my time for rebuttal, unless Your Honor has any other questions. You may. Thank you, Your Honor. Thank you, Your Honors. I'm going to use Michael Wall on behalf of Branch Banking and Trust again. And the characterization of what actually happened in the State court, I think, here has been incorrect. They didn't even address the issues that were being talked about, the consideration issues. Those were never even pleaded. Those were not addressed. Well, we were given a citation to a Second Amendment complaint, which I confess I'm not familiar with, but presumably it's there someplace.  Right. And if you look at that complaint, you'll find that it wasn't. There were six causes of action that were pleaded, and there were two completely separate and distinct issues that are going on in this case. One is the priority of the claims, and it's based on the argument that it was always intended, and all the parties knew, and it was intended that Branch Banking and Trust would be in first place, and there's just a technical problem with the documents. That's all that was pleaded, theories on that priority issue, six of them, four of which were tried over this ten-day trial, which wasn't ten consecutive days. It was ten days over a period of months. The amount of lender's claim was not litigated. The validity of that claim was not litigated. It wasn't even pleaded, let alone litigated. However, the district court judge had a tremendous number of findings of fact, many of which are simply recitations of what the parties had said the situation was, background factual stuff. Lots of it was just completely dicta. But if you look at the case, the most important part of it is that even on the only issue that was decided, supposedly the priority issue, the judge didn't change the priority of the parties specifically because there was no standing. That was the only issue. The judge determined that branch banking could not prove that it was the successor in interest to Comstock, whatever the bank was. And as a result, Colonial, that's right, sorry, Colonial Bank. And as a result of that, they couldn't prove any of their priority claims. That was it. Nothing else was decided. The oft-repeated argument that the Nevada Supreme Court affirmed the findings of fact as the additional findings of fact and said that they were necessary to the decision is simply not true. If you look at the decision of the Nevada Supreme Court, the only time that gets mentioned, even mentioned, is when they're setting forth what the arguments are of the parties, and then it's never addressed. Because the Nevada Supreme Court only addressed one issue, standing. The district court's decision was on standing. The Nevada Supreme Court addressed standing. They tried to address a different issue on rehearing on Bonk. The majority said, no, that's a new issue and we're not going to hear it. And the dissenters said, you really should hear that issue. That's really what it was. And all of those issues had to do with whether or not branch banking and trust was the successor in interest to Colonial. Not one of those issues had anything to do with lenders, whether or not the lenders ever lent any money at all to the debtor, and whether or not, and the amount of that. So now what we have is, first we had a motion for substantive consolidation of the two of the lenders' bankruptcy and St. and R&S St. Rose's bankruptcy because they're one and the same. And that was denied on issue preclusion grounds. And that went to appeal to a federal district judge. I can't remember which one it was. It was one of the senior judges sitting there. And it got reversed because they shouldn't on a finding that there should be no issue preclusion on that issue and sent back. And then we have this appeal where only the amount of lenders' claim has been challenged and the district judge or the bankruptcy court said that is, that's been resolved by the State court, issue preclusion. And that went on appeal to the district court, and that was Judge Mann. And he said, no, this hasn't been resolved, so it's remanded back. And now in a separate case, in the lenders' bankruptcy, the validity of the claim has been brought before the same bankruptcy judge. And for the same reason, the bankruptcy judge has determined that issue preclusion precludes us from litigating the validity of the lenders' claim. And that matter went on appeal to the district court. And Judge Navarro said, no, issue preclusion doesn't apply here, and remanded it back. And that's in a separate appeal that has just been briefed and has just recently concluded on. Is it your view we have jurisdiction? Absolutely not. My view is that this Court does not have jurisdiction, that this is absolutely piecemeal at this point. The claim that this is, that issue preclusion is a factual issue, I mean a legal issue, and therefore it's not being sent back for factual determinations is incorrect. Issue preclusion determining how the statute applies, that may be a legal issue, but that's already been done and it's been sent back. What's been sent back is to continue the litigation about the validity of the claims. And in the other case, it's been sent, I mean about the amount of the claim. In the other case, it's been sent back to determine the validity of the claims. Those are factual issues. There are going to be a lot of evidence to be taken, a trial to be had in order to determine whether or not there ever was a loan from lenders, and we have contested that from the beginning. Any funds came from lenders. The funds came from different sources. It's an insider transaction. We've been challenging that from the beginning. If we don't have jurisdiction, did the district court? Yes. The district court's jurisdiction was not based on finality. The district court's jurisdiction was based on a specific statute which makes this appealable within the discretion of the district court, and the district court exercised its discretion. Which statute is? I don't have it online. All right. I cited it in my brief to your owners. I understand. It specifically made it the bankruptcy panel or the district court had jurisdiction, but that jurisdiction was discretionary with the district court. But this court's jurisdiction is not discretionary. This court has to have a final determination. That recognizes what the Congress is saying. There should be some district court review of what's going on in bankruptcy, but just because there's an interlocutory appeal to district court doesn't mean there has to be an interlocutory appeal to this court. This court can only have jurisdiction if there is a final matter, and that would have to be a discrete matter that was before the court has been resolved finally, and it hasn't in this case. There's a remand and a remand with instructions to continue the litigation. And that brings us to the State law issue of whether or not there's issue preclusion, and they can't meet even one of the elements of issue preclusion. Number one, the first element of issue preclusion is they have to be the same issue. And the issue that was resolved in district court was standing, and the issue that was actually being litigated in district court was priority, and it didn't get resolved on any basis except standing. And there now, say, counsel in the last case said, no, priority is already set. Priority hasn't been set. It was set by the State court decision, but that State court decision was based solely and only on the determination that because branch breaking, bank and trust wasn't a successor in interest, they couldn't litigate priority. We can't. Kennedy. But this argument you're making now is only made in case I find we have jurisdiction, correct? That's correct. This argument, I think, demonstrates that you don't have jurisdiction because we're going to still be litigating issue preclusion. We've got issue preclusion on this issue, issue preclusion on this issue, issue preclusion on this issue. There's going to be argument in the bankruptcy court on issue preclusion on the issue of priority, issue preclusion on the issue of whether or not there were misrepresentations. And each one of those can't come before this Court in a piecemeal fashion under the statutes the way that they're set. But assuming there was jurisdiction, then we would make the argument that substantively the issues were different. The ruling was not on the merits as to the amount of the claim. In this case, that's the only issue, is the amount. There's never been any evidence presented. It wasn't a part of the case. Nobody litigated about whether or not lenders had actually made loans, how much the amount was. That was not an issue in the State court. That issue has only been in this case where we challenged their claim based on the amount of the claim. And on these bases, the bankruptcy court simply said, well, that's already resolved because one of these many, many, many findings of facts is lenders made a claim when it was $12 million, and that was just a recitation of background fact at worst and at best it's dicta because there was no evidence that was presented for the court to even consider about that. I have to say, as an observation, not as a finding of any kind, but it struck me that that question shouldn't be that hard. I mean, $12 million is traceable. Somebody should know if there's $12 million there where it is and what happened to it. It's odd that we're still here dealing with that as a question. We haven't had an opportunity to litigate it, and then we wouldn't have that as a question. We presented the evidence of where the funds came from, and they came from the we believe the funds came from the individual investors, not from lenders, but it went through R&S to lenders and back to R&S. That's what we want to litigate below. And we think we have the documentation. Certainly we have that will prove that, and we need to do the discovery and the trial work on that. But I agree with that. It's something that with tracing we should be able to resolve, but we haven't had an opportunity to do so. The reason we haven't had an opportunity is because the first big issue became the priority issue because of the documentation problems, and they went to the State Court to try to fix those issues. And instead of getting to fix those issues, they had the problem with standing. And so we have been litigating for years over those issues and never getting down to actually litigating the specific issues, always litigating the problems of getting to the issues. The standing issue is specific and discreet to the State Court system. It has nothing to do with bankruptcy court. In the State Court system, there had to be privity. We don't need that privity in the bankruptcy court in order to litigate those issues. That's one of the things that Judge Mahan recognized, why the issue was different, because these claims you can litigate in bankruptcy court without privity, but in the State Court you couldn't litigate those claims without privity. And so that's the privity issue. And then the most important one, those issues that we're talking about here simply were never actually and necessarily litigated in the State Court action. It's that simple. Issue preclusion does not apply. Unless you have other questions, that's all I have. Thank you. Very briefly, Your Honor, I think counsels continue to try to, as they have done for six years, try to convey the decision of the district court as a standing issue. It wasn't a standing issue. It's a failure of proof issue. If a plaintiff fails to put on any, in a negligence case, fails to put on any evidence of damages, it doesn't mean the plaintiff isn't damaged, but they still lose their case because they failed to prove their claim. Well, they failed to prove that they stood in the shoes of Colonial. Correct. They failed to prove. They failed to prove, put on evidence, that they received, that they were a successor or received an assignment of the note. So it's not a standing issue. It was an evidentiary failure of proof issue. That's how the district court characterized it. Standing is a term like jurisdiction. It gets thrown around a lot to apply in places maybe it shouldn't apply. But the point is what the district court decided was that BB&T, you're not here showing me that you're entitled to assert the claims of Colonial. Correct. But then doesn't that suggest that some of the things that would have gone into Colonial if it could have stood there for itself or BB&T if it was there with the proof that they needed, maybe the State court winds up addressing some of these other issues. But in the end, there's no heavy lifting because they don't have to consider plaintiff's case, plaintiff being branch banking, because branch banking hasn't established it's entitled to be there. But don't forget there were counterclaims brought by R&S St. Rose Lenders. Those counterclaims sought a declaration that the deed of trust did have priority position, that St. Rose Lenders' deed of trust did have priority position. And the court, the district court determined that St. Rose Lenders' deed of trust entered a declaration in favor of St. Rose Lenders' deed of trust that St. Rose Lenders' deed of trust did in fact retain its priority position. Priority over whom? Over the Colonial Bank deed of trust. See, that gives me some pause. Because if the core of the district court's decision is that they hadn't proved they were a Colonial successor, I'm not sure how the district court could declare what Colonial status was. It didn't declare what Colonial status was. The court simply reaffirmed, which was the recording of the Nevada statutes, that it was in first position. But so that's, it wasn't really affecting the status there. What it's saying is you have a deed of trust that's prior to, and so therefore I'm reaffirming that it is in first position over the Colonial one. With respect to the issue of the consideration, again, counsel argues that, well, gee, this is not, it's the amount. What the Second Amendment complaint says is paragraph 14. Plaintiff is without information as to whether R&S lenders paid any consideration to R&S for the R&S lenders' DOT, which I assume is deed of trust. Correct. I look at the actual claims alleged, and I don't see anything that really talks about failure of consideration. Is there something I'm missing? I believe in, maybe it was an earlier iteration of the complaint in one of the, I believe it was in the equitable subrogation claim. They did reiterate that in the actual claims itself. Well, if it was in an earlier version of the complaint, the district court wouldn't be adjudicating it. Correct. I believe it was an earlier version. But that issue, to say that that issue was not raised in the pleadings, the question of the validity of the note is absolutely not true. The question of the validity of the note was raised in the pleadings, and that's why the district court made that finding, that there was an actual loan. Okay. I see that my time is up. It is. We appreciate the help that all counsel have given us in both versions of this case. The case just argued is submitted. That concludes the argument calendar. We're adjourned. Thank you very much. All rise. All rise. Court is adjourned. Court is adjourned.
judges: Lasnik, Clifton, Smith